UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TONIKA HAYNES,

                              Plaintiff,

                                                      **Hon. Hugh B. Scott**

            v.

                                                      02CV250A

                                                      **Report
                                                      &
                                                      Recommendation**

QUALITY MARKETS (THE PENN
TRAFFIC COMPANY), UNITED FOOD
AND COMMERCIAL WORKERS
INTERNATIONAL UNION,

                              Defendants.


        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket Nos. 8, 42).   The instant matter before the Court is defendant Quality Markets' (the

Penn Traffic Company) (hereinafter "Quality"[1]) motion (Docket No. 57) for judgment on the

pleadings dismissing the Complaint pursuant to Fed. R. Civ. P. 12(c).

_____

        [1]Defendant Quality Markets notes in its moving papers that Quality is not a separate
corporate entity, but a name by which the Penn Traffic Company operates a chain of grocery
stores.  The proper defendant is Penn Traffic.  See Docket No. 59, Quality Memo. of Law at 2
n.1.
        But to distinguish the defendant named in this action from the debtor in the Southern
District of New York bankruptcy, this Court will refer to the defendant as "Quality" and the
debtor as "Penn Traffic."

## BACKGROUND

*Complaint*

Plaintiff, proceeding <u>pro se</u> and 18 years old when she commenced this action, filed this action against her former employer and former union (among others) (Docket No. 1, Compl. ¶ 1). There, she alleges discrimination for filing charges, and failure by the union to represent her. Pertinent to Quality's present motion, plaintiff alleges that she was a cashier at Quality Markets at 380 Central Park Plaza, in Buffalo (<u>id.</u> ¶¶ 2, 7). In September 2000, plaintiff verbally was warned when she had a shortage in her drawer of $50. Since her shop steward had died, plaintiff could not grieve this charge (<u>id.</u> ¶ 8). On or about March 3, 2001, plaintiff was written up and suspended by the store manager because of a shortage of $54.21 (<u>id.</u> ¶ 9). Plaintiff alleges that, on March 27, 2001, Quality violated its internal policy by falsely accusing plaintiff of stealing spaghetti she had purchased from the store for her lunch (<u>id.</u> ¶ 10). She claims that she was then unlawfully interrogated, suspended, and written up for that last incident (<u>id.</u>). On or about April 6, 2001, Quality terminated plaintiff (<u>id.</u> ¶ 11). Plaintiff claims that she filed timely charges of discrimination with state and local agencies and with the defendant United Food and Commercial Workers International Union local (hereinafter "Union"), alleging that Quality violated Title VII and state fair employment laws (<u>id.</u> ¶ 12). She later received a right to sue letter from the Equal Employment Opportunity Commission (<u>id.</u> ¶ 13). She seeks from Quality compensatory damages for lost wages (with interest) due to her retaliatory discharge, lost opportunity damages, damages for pain and suffering, punitive damages (<u>id.</u> ¶ 14). The second claim is against the Union for breaching its duty to fairly represent plaintiff (<u>id.</u> ¶¶ 15-26). She had additional claims against the National Labor Relations Board and the Buffalo office of the

Equal Employment Opportunity Commission (id. ¶¶ 27-43, 44-56), which were latter dismissed

(Docket No. 37, Order of Mar. 25, 2004 (granting Docket Nos. 5, 12, motions to dismiss by

National Labor Relations Board and Equal Employment Opportunity Commission); see Docket

No. 31, Report & Recommendation).

Quality answered the Complaint on or about February 25, 2003 (Docket No. 25).

*The Penn Traffic Bankruptcy*

Meanwhile, the Penn Traffic Company ("Penn Traffic") the corporation that operates

under the name of "Quality Markets" (see note 1, supra), filed for bankruptcy on May 30, 2003,

in the United States Bankruptcy Court for the Southern District of New York, In re the Penn

Traffic Company, No. 03-22945 (see, e.g., Docket No. 58, Quality Atty. Affirm. ¶ 5, Ex. A).  On

March 17, 2005, the Bankruptcy Court issued its Order and Judgment confirming the

reorganization plan (id.).  That confirmation order permanently precluded anyone with a claim

against Penn Traffic that predated the effective date of the plan (April 13, 2005) from proceeding

with litigation (id., Ex. A, at 11-12, ¶ K).  Plaintiff filed a proof of claim with the Bankruptcy

Court on September 30, 2003 (id. Ex. B).  Penn Traffic, on June 10, 2005, filed an objection in

Bankruptcy Court to plaintiff's proof of claim (among others filed) for failing to state an amount

due and owing (id. Quality Atty. Affirm. ¶ 8, Ex. C, Reorganized Debtors' Twelfth Omnibus

Objection to Allowance of Certain Proofs of Claim, ¶ 12, internal Ex. C, at 3).  Responses were

due to that objection by July 11, 2005, but plaintiff did not file one (Docket No. 58, Quality Atty.

Affirm. ¶ 9).  On July 14, 2005, the Bankruptcy Court issued an order with respect to Penn

Traffic's objections; this Disallowance Order disallowed and expunged certain creditors' claims,

including plaintiff's claim arising from this action (id. ¶ 10, Ex. D, Bankr. Ct. Order, at 2).

Quality now argues that this Order also enjoins creditors such as plaintiff from asserting these discharged claims against Penn Traffic (Docket No. 59, Def. Memo. at 6-7).  It appears that plaintiff has not appealed the Bankruptcy Court's discharge order.

*Post-Bankruptcy Proceedings in This Case*

Following Penn Traffic's discharge from bankruptcy, this Court held a status conference, on August 17, 2005, regarding this case (Docket No. 55).  Plaintiff, in the interim, had moved for summary judgment against the Union (Docket No. 51), but after the conference the Court held that motion in abeyance and issued a new scheduling Order (Docket No. 56) discussed below. After that conference, Quality sent to chambers a letter with extensive exhibits indicating the status of the Southern District of New York <u>Penn Traffic</u> bankruptcy.  Quality concluded that plaintiff's claims against Quality should be dismissed (letter of Quality's Atty. to Chambers, Aug. 26, 2005).  Quality now notes in its motion that plaintiff failed to respond to this letter (Docket No. 58, Quality Atty. Affirm. ¶ 11), although that letter did not call upon the <u>pro se</u> plaintiff to do anything or to respond to it.

The latest scheduling Order in this case had dispositive motions due by December 23, 2005 (Docket No. 56).  On November 9, 2005, Quality filed the present motion for judgment on the pleadings (essentially the pleading in the Bankruptcy Court proceeding for Penn Traffic), arguing that the bankruptcy disallowance of plaintiff's claim against debtor Penn Traffic disposes of her claims here against Quality (Docket No. 57).  The briefing schedule for this motion gave plaintiff until December 7, 2005, to respond, and any reply was due by December 21, 2005.  The motion was deemed submitted (without oral argument) on December 21, 2005 (Docket No. 60). This briefing Order also notified plaintiff that, if she failed to respond, that this action (as against

Quality) may be dismissed for her failure to prosecute it (id., citing Irby v. New York City
Transit Auth., 262 F.3d 412 (2d Cir. 2001)).  Given plaintiff's response, the Court issues this
Report & Recommendation prior to Quality's time to reply.

   In response, plaintiff directs the Court to look at her Complaint under the liberal pleading
standard for Rule 12 motions.  She argues that Quality's motion should be denied because there
is an exception from discharge in bankruptcy due to the "willful and malicious injury by the
debtor to another entity or to the property of another."  (Docket No. 61, Pl. Response ¶¶ 6, 7,
citing 11 U.S.C. § 523(a)(6).)  She concludes that she should receive the relief sought in the
Complaint (id. ¶ 8).

## DISCUSSION

I.    Rule 12(c)  Standard

   A Rule 12(b)(6) motion for failure to state a claim ordinarily has to be made before or
within a responsive pleading, Fed. R. Civ. P. 12(b); see 5C Charles A. Wright & Arthur R.
Miller, Federal Practice and Procedure § 1361, at 92 (Civil 3d ed. 2004).  But there is no waiver
of the defense from Rule 12(b)(6) that a complaint fails to state a claim for which relief may be
granted.  5C Federal Practice and Procedure, supra, § 1361, at 95.  A Rule 12(c) motion for
judgment on the pleadings may be used to raise defenses listed in Rule 12(b), including failure to
state a claim under Rule 12(b)(6), after the close of pleadings, Fed. R. Civ. 12(c), (h)(2); see
5C Federal Practice and Procedure, supra, § 1367, at 216-17.  A motion for judgment on the
pleadings under Rule 12(c) is governed by the standard similar to that for a motion to dismiss for
failure to state a claim under Rule 12(b)(6), wherein the Court accepts as true all allegations in
the Complaint and draws all inferences in favor of the non-movant, here plaintiff.  Irish Lesbian

and Gay Org. v. Giuliani, 143 F.3d 638, 744 (2d Cir. 1998); Wynn v. Welch, 941 F. Supp. 28, 29

(N.D.N.Y. 1996) (Pooler, J.); see Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d

57 (2d Cir. 1985).  As under Rule 12(b)(6), the Court cannot render a judgment on the pleadings

dismissing a Complaint under Rule 12(c) unless it appears "beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  Like a Rule 12(b)(6) motion, a Rule 12(c) motion is

addressed to the face of the pleading.  The pleading is deemed to include any document attached

to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  However, conclusory allegations that merely

state the general legal conclusions necessary to prevail on the merits and are unsupported by

factual averments will not be accepted as true.  New York State Teamsters Council Health and

Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

 Here, Quality is introducing the pleadings from the Penn Traffic bankruptcy to establish

that plaintiff's claims were discharged in that bankruptcy.  Quality contends that this Court

should consider on a motion for judgment on the pleadings the effect of the bankruptcy

proceeding on plaintiff's claim (Docket No. 59, Quality Memo. of Law at 4), see O'Loghlin v.

County of Orange, 229 F.3d 871 (9th Cir. 2000); Bogdan v. Stolt-Nielsen S.A., No. 01CV1910,

2005 U.S. Dist. LEXIS 7461, at *2 n.1 (E.D.N.Y. Apr. 19, 2005) (Docket No. 59, Quality Memo.

of Law, Ex. A).

II. Effect of Penn Traffic Bankruptcy on Plaintiff's Present Claim

 Quality argues that the Bankruptcy Court's disallowance of plaintiff's claim is binding

upon this Court (Docket No. 59, Quality Memo. of Law at 2).  Plaintiff was on notice of the Penn

Traffic bankruptcy and filed a claim therein, but did not respond to the debtor's objection to the claim as being indefinite.[2]

Plaintiff attempts to contend that a liberal reading of her Complaint shows that she alleged malicious and willful injury by Quality, hence excluding the discharge of this claim under 11 U.S.C. § 523(a)(6).  "'Willful and malicious' conduct in the context of § 523(a)(6) is intentional conduct causing an injury that is more than recklessness or negligent.  'Congress regards the described conduct to be so socially reprehensible that indebtedness resulting from it is not worthy of discharge in bankruptcy . . . .'  In re Rex, 150 B.R. 505 (Bankr. D. Mass. 1993)."  Kresmery v. Service America Corp., 227 B.R. 10, 15 (D. Conn. 1998).

Plaintiff's argument has three flaws, each fatal to resisting Quality's motion.  First, plaintiff should have raised this discharge exception in the Bankruptcy Court, for example responding to Penn Traffic's objection to plaintiff's proof of claim.  Plaintiff waived that exception by not responding to that objection in Bankruptcy Court or by appealing that court's order discharging plaintiff's claim.  A creditor (like plaintiff here) who fails to object to discharge plan or appeal the order confirming the plan waives the right to assert a post-confirmation collateral attack on the plan, see Great Lakes Higher Educ. v. Pardee (In re Pardee), 193 F.3d 1083, 1086 (9th Cir. 1999).  (See also Docket No. 64, Quality Reply Memo. at 2-3.)  In effect, this action is a collateral attack on the Bankruptcy Court's discharge order.  The Bankruptcy Court has exclusive jurisdiction to determine the dischargeability of the debt under

---

[2]Plaintiff is a young adult proceeding pro se in this action.  She may have not responded in the bankruptcy proceeding because she probably proceeded pro se in the bankruptcy proceeding and may not be aware of the intricacies of bankruptcy practice.  She has belatedly discovered 11 U.S.C. § 523(a)(6) as a possible basis for relief, but, as discussed below, she may have found it too late and in the wrong forum.

this exception, see In re Diaz, 120 B.R. 967, 971 (Bankr. N.D. Ind. 1989) (quoting 3 Collier on Bankruptcy ¶ 523.13[9] (15th ed. 1988)).  She cannot now contend in this Court that the discharge was flawed when she failed to object in the proper forum.  As Quality argues, the Bankruptcy Court did not discharge plaintiff's claim, it found that plaintiff defaulted on the claim and it was thus disallowed and expunged (Docket No. 64, Quality Reply Memo. at 2).

Second, the Complaint, even liberally construed (under Rule 12 or as a pro se pleading, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)), does not allege willful and malicious injury by Quality to warrant an exception under 11 U.S.C. § 523(a)(6).  Plaintiff merely alleges in her First Claim that Quality falsely accused her of shorting her cash drawer and stealing merchandise, leading to her termination (Docket No. 1, Compl. ¶¶ 8-11).  Although she seeks punitive damages against Quality (see id. ¶ 14(c)), plaintiff does not allege either willful or malicious conduct or injury, much less the combination of willful and malicious injury required under § 523(a)(6).  To have a debt excepted from bankruptcy discharge for the debtor's willful and malicious injury, the debtor's actions have to be both willful and malicious.  In re Hall, 295 B.R. 877 (Bankr. W.D. Ark. 2003).  Here, plaintiff's allegations do not constitute willful or malicious injury, see Kresmery, supra, 227 B.R. at 15.

Third, courts in this Circuit have held that 11 U.S.C. § 523(a)(6) does not applies not to corporate debtors, e.g. Daluz v. Automatic Plating of Bridgeport, Inc. (In re Automatic Plating of Bridgeport, Inc.), 202 B.R. 540, 542 (Bankr. D. Conn. 1996) (citing cases, denying relief to creditor with pending Title VII claim against debtor), thus plaintiff cannot rely upon this exception against this corporate debtor, Penn Traffic.  As was found by the district court in Kresmery, supra, 227 B.R. at 15, "[a]bsent any specific details or incidents of defendant's

8

conduct which is inferably 'malicious or willful,' the plaintiff has failed to show the existence of any triable factual issue on whether his claim qualifies for the § 523(B)(6) exception to dischargeability."

Quality has established that plaintiff's claim was disallowed by the bankruptcy court and this Court has to recognize that finding, see Pepper v. Litton, 308 U.S. 295, 304 (1939).  As a result, plaintiff's claims against Penn Traffic or Quality should be **dismissed** and defendant Quality should be granted **judgment on the pleadings**.[3]

If this Report & Recommendation is adopted and claims against Quality are dismissed, the remaining claims in this action would be plaintiff's breach of the duty to fair representation against the Union (cf. Docket No. 51, pl. motion for summary judgment against the Union, held in abeyance by this Court's Order, Docket Nos. 55, 56)[4].

## CONCLUSION

Based upon the above, it is recommended that defendant Quality Markets' (the Penn Traffic Company) motion (Docket No. 57) for judgment on the pleadings dismissing the Complaint pursuant to Fed. R. Civ. P. 12(c) be **granted**.

---

[3]Plaintiff's response seeking, in effect, judgment on the pleadings in her favor, Docket No. 61, Pl. Response ¶ 8, also should be denied.

[4]Defendant Union has filed for summary judgment, Docket No. 62.  In scheduling this motion, the Court allowed plaintiff the choice of renewing her previous motion for summary judgment against the Union, Docket No. 51, or make some other motion, or merely respond to the Union's latest motion, Docket No. 63.  Responses to the Union's motion are due by January 31, 2006, any reply by February 8, 2006, and that motion (and possibly plaintiff's renewed or new motion) will be deemed submitted without oral argument as of February 8, 2006, Docket No. 63.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_____
s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      December 23, 2005