UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TONIKA HAYNES,

                              Plaintiff,

                                                        **Hon. Hugh B. Scott**

              v.
                                                        02CV250A

                                                        **Report
                                                        &
                                                        Recommendation**

QUALITY MARKETS (THE PENN
TRAFFIC COMPANY), UNITED FOOD
AND COMMERCIAL WORKERS
INTERNATIONAL UNION,

                              Defendants.


              This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket Nos. 8, 42).   The instant matter before the Court is the motion of defendant United Food

and Commercial Workers International District Union Local One (hereinafter "Union") for

summary judgment (Docket No. 62).   Plaintiff had moved for summary judgment against the

Union (Docket No. 51), with this Court holding that motion in abeyance (Docket No. 55).   After

the Union filed its motion, the Court invited plaintiff to revive her motion against the Union

(Docket No. 63).   Instead, plaintiff responded to the Union's motion, seeking its denial, without

reference to her motion (Docket No. 66, Pl. Memo. at third unnumbered page).

Separately defendant Quality Markets' (the Penn Traffic Company) (hereinafter

"Quality"[1]) moved for judgment on the pleadings dismissing the Complaint against it pursuant to

Fed. R. Civ. P. 12(c) (Docket No. 57).   The undersigned has rendered a Report &

Recommendation that Quality's motion for judgment on the pleadings be granted (Docket

No. 65, Dec. 23, 2005), with any objections due ten business days from receipt of the Report (or

approximately by January 10, 2006, factoring in intervening weekend days and holidays).   To

date, no timely objection has been filed.

## BACKGROUND

*Complaint*

Plaintiff, proceeding pro se and eighteen years old when she commenced this action, filed

this action (on or about April 1, 2002) against her former employer and former union (among

others) (Docket No. 1, Compl. ¶ 1).   There, she alleges discrimination for filing charges, and

failure by the union to represent her.   Plaintiff was a cashier at a Quality Markets in Buffalo (id.

¶¶ 2, 7).   Relevant to the present motions, on or about March 3, 2001, plaintiff was written up

and suspended by the store manager because of a shortage of $54.21 in her drawer (id. ¶ 9).

Plaintiff alleges that, on March 27, 2001, Quality violated its internal policy[2] by falsely accusing

---

[1]Defendant Quality Markets notes in its moving papers that Quality is not a separate
corporate entity, but a name by which the Penn Traffic Company operates a chain of grocery
stores.   The proper defendant is Penn Traffic.   See Docket No. 59, Quality Memo. of Law at 2
n.1.
      But to distinguish the defendant named in this action from the debtor in the Southern
District of New York bankruptcy, this Court will refer to the defendant as "Quality" and the
debtor as "Penn Traffic."

[2]Plaintiff later argued to the Union that Quality violated its policy by having a mere
cashier, rather than a department head, receive her payment for the merchandise, thus somehow
invalidating her termination, see Docket No. 62, Aff. of Vernae Jones ¶ 17.

2

plaintiff of stealing spaghetti she had purchased from the store for her lunch (id. ¶ 10).  She

claims that she was then unlawfully interrogated, suspended, and written up for this incident

(id.).  On or about April 6, 2001, Quality terminated plaintiff (id. ¶ 11).  Plaintiff claims that she

filed timely charges of discrimination with state and local agencies and with the Union, alleging

that Quality violated Title VII and state fair employment laws (id. ¶ 12).  She later received a

right to sue letter from the Equal Employment Opportunity Commission ("EEOC") (id. ¶ 13).

In her second claim against the Union, plaintiff alleges that the Union breached its duty to

fairly represent her (id. ¶¶ 15-26), namely by refusing to arbitrate her termination.  She alleges

generally that the Union violated her state fair employment rights and her rights under Title VII

(id. ¶ 24).  She claims that she received from the EEOC a notice of right to sue both the Union

and Quality (id. ¶ 25).

She had additional claims against the National Labor Relations Board ("NLRB") and the

Buffalo office of the EEOC (id. ¶¶ 27-43, 44-56), which were latter dismissed (Docket No. 37,

Order of Mar. 25, 2004 (granting Docket Nos. 5, 12, motions to dismiss by the NLRB and

EEOC); see Docket No. 31, Report & Recommendation (recommending dismissal of claims

against NLRB and EEOC)).

*Factual Allegations*

According to the moving papers, plaintiff worked at Quality from June 2000 as a cashier

(Docket No. 62, Union Statement of Material Facts ¶ 2).  She was covered by the collective

bargaining agreement the Union entered into with Quality (see id. ¶ 1).  As for the March 2001

discipline arising from the shortage in plaintiff's drawer, the Union contends that it had that

discipline rescinded and had restored to her the lost one day's pay (id. ¶ 5).  As for the spaghetti

lunch incident, the Union contends that she obtained a meal valued at $4.35 (plus tax) for $1.08 (id. ¶ 6; Docket No. 62, Jones Aff. ¶ 7, Ex. C).   A Union representative, Vernae Jones, investigated the latter incident and obtained a copy of plaintiff's written statement to Quality management admitting that she made a mistake in consuming a product that she purchased for only one-fourth its value (Docket No. 62, Jones Aff. ¶¶ 8, 9, Exs. D, E).   Plaintiff denied the Union's statement of facts not in dispute on this point (see Docket No. 66, Pl. Statement, ¶¶ 6, 7). Plaintiff's statement went on that she refused a union representative when asked if she wanted one (Docket No. 62, Jones Aff. Exs. D, E at 2 (letter to plaintiff of June 4, 2001, citing NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975) (union's duty to represent employee during employer's investigatory interview)).   Plaintiff's parents, however, argued that the statement could not be used because she made it when she was only seventeen years old (id. ¶ 13)[3].   Another employee involved in the incident (who sold plaintiff the meal at the unauthorized discount) admitted his role and was terminated; he did not seek union representation to grieve his termination (id. ¶¶ 8, 13).   Jones concluded that there was no evidence to support plaintiff's contention that she was being set up nor her argument that she was fired in violation of internal Quality policy and, on behalf of the Union, declined to grieve plaintiff's termination (id. ¶¶ 15, 17-18, 19).   Jones then contacted Quality management to see if it would change its position regarding plaintiff, but

---

[3]The Union responded to plaintiff's parents argument about plaintiff's age with the J. Weingarten case, Docket No. 62, Ex. E, at 2, which involved a similar incident (employee accused by employer of taking merchandise for less than full value, where union was held to represent the employee during the investigatory interview of that incident), but that case did not discuss the employee's age.  The Union, in that response, asserted that its attorneys had not found any federal or New York State cases dealing with a minor's statement made during an employment disciplinary proceeding, id.

Quality reaffirmed the termination (id. ¶ 20).  Jones reported her findings and the Union's

declination to grieve the matter to plaintiff (id. ¶ 20, Ex. E).

Plaintiff then pled her case to the Union's Executive Board (id. ¶¶ 21-22) which denied

her appeal and affirmed Jones' decision not to arbitrate plaintiff's termination (id. ¶ 23).  She

then filed charges with the NLRB against the Union alleging violation of the National Labor

Relations Act, the NLRB declined to pursue these charges (id. ¶ 24, Ex. G), and this declination

was affirmed on administrative appeal (id. ¶ 25, Ex. H).  Jones never received any indication that

plaintiff filed charges against the Union with either the New York State Commission of Human

Rights or the EEOC and plaintiff did not obtain a right to sue letter from the EEOC as against the

Union (id. ¶¶ 26, 28).

The Union answered the Complaint on or about January 24, 2003 (Docket No. 20),

asserting affirmative defenses of statute of limitations for both the Title VII and duty of fair

representation claims and failure to follow procedural prerequisites for a Title VII action (id. 3d-

5th Affirm. Defenses).  The action then was delayed by Penn Traffic's bankruptcy.

*Plaintiff's Summary Judgment Motion*

On August 9, 2005, plaintiff moved for summary judgment against the Union arguing that

it failed to meet its duty of fair representation to her by not arbitrating her grievance against

Quality for terminating her (Docket No. 51).  She argued that the Union's denial was "arbitrary,

capricious, done in bad faith and in collusion with the discriminatory practices of Quality

Markets (the defendant Employer) as the evidence will show" (Docket No. 51, Pl. Memo. at

second unnumbered page), but she does not present evidence of these points.  Plaintiff, however,

presents concessions by the Union that she was terminated during the pendency of another

Title VII grievance (id. at fourth unnumbered page, ¶ (3), citing Docket No. 52, Pl. Proposed

Findings of Uncontroverted Facts ¶ 2, Docket No. 51, Memo. Ex. A, Answers to Interrogatories

and Requests for Admissions ¶¶ 4-8), but the Union in the Request for Admissions either denies

knowledge or denies the admission (see Docket No. 51, Memo. Ex. A, ¶¶ 4-8).  Plaintiff also

points to the Union's concession that it did not arbitrate plaintiff's retaliatory termination (id. at

unnumbered pages 4-5, ¶ (4)).

Following Penn Traffic's discharge from bankruptcy, this Court held a status conference,

on August 17, 2005, regarding this case (Docket No. 55).  Plaintiff, in the interim, had moved for

summary judgment against the Union (Docket No. 51), but after the conference the Court held

that motion in abeyance and issued a new scheduling Order which had dispositive motions due

by December 23, 2005 (Docket No. 56).

*Union's Summary Judgment Motion*

On December 19, 2005, the Union filed its present motion for summary judgment,

arguing that plaintiff's fair representation claim was time barred, any Title VII claim she had

against the Union was procedurally barred by her failure to raise it before the EEOC, and that her

contention that the Union was obligated to take her grievance to arbitration is not supported by

law (Docket No. 62, Union Memo. of Law at 1).

The briefing schedule for this motion gave plaintiff until January 31, 2006, either to

decide to renew her previous summary judgment motion against the Union, to make a new

motion, or to respond to the Union's motion, and any reply was due by February 8, 2006.  The

motion (or motions) was deemed submitted (without oral argument) on February 8, 2006 (Docket

No. 63).   The Union's motion also notified plaintiff that, if she failed to respond, that this action

6

(as against Quality) may be dismissed for her failure to prosecute it (Docket No. 62, <u>Irby</u> notice,

citing <u>Irby v. New York City Transit Auth.</u>, 262 F.3d 412 (2d Cir. 2001)).

In response, plaintiff now argues that the Union did not raise the affirmative defense of

statute of limitations in its Answer, hence waiving it (Docket No. 66, Pl. Memo. at first

unnumbered page).  She points to the EEOC intake questionnaire as raising a Title VII claim

against the Union, arguing that there is an identity of interest (<u>id.</u> at second unnumbered page),

but plaintiff does not state whose interest the Union identified with.  She argues that the Union's

contention that it did not breach its duty merely states a conclusion subject to trial (<u>id.</u> at second

through third unnumbered pages).  Plaintiff disputes the Union's contention surrounding her

earlier employer discipline, contending that there are issues of material fact (Docket No. 66, Pl.

Aff.[4] ¶ (A)).  She contends that she was exposing Quality's unlawful practice of making false

accusations against cashiers, claiming shortages in their cash drawers, with that false accusation

as a pretext for her eventual termination (although that termination was for an unrelated theft of

store product) (<u>id.</u> ¶ (2)).

## DISCUSSION

Even though plaintiff has not sought to revive her summary judgment motion against the

Union, by considering what is essentially the Union's cross-motion for summary judgment

dismissing plaintiff's claims against it, and plaintiff proceeding <u>pro se</u> and possibly not

understanding the Court's scheduling Order for the consideration of the Union's motion, the

_____

[4]Plaintiff calls this document an "Affidavit" but it is not sworn to in any fashion.  Given plaintiff's <u>pro se</u> status, however, the Court will still consider the document.  <u>Cf.</u> 28 U.S.C. § 1746 (unsworn declaration, provided taken under penalty of perjury); <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (per curiam) (liberally construe <u>pro se</u> pleadings).

Court needs to consider the arguments raised in plaintiff's motion against the Union as well as plaintiff's assertions against that motion.

I.      Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c).   The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.     Union's Motion

The Union raises three grounds for granting judgment in its favor and dismissing the

Complaint.  First, plaintiff's fair representation claim was time barred; second, any Title VII

claim she had against the Union was procedurally barred by her failure to raise it before the

EEOC; and, third, her contention that the Union was obligated to take her grievance to arbitration

is not supported by law (Docket No. 62, Union Memo. of Law at 1).  In reply, the Union

contends that plaintiff is raising, for the first time, a Title VII claim but without meeting the

procedural prerequisites (Docket No. 67, Union Reply Memo. of Law at 1).

A.     Statute of Limitations

The Union argues that the six-month statute of limitations for plaintiff's claim of breach

of duty has expired.  See DelCostello v. Teamsters, 462 U.S. 151, 169-70, 172 (1983) (Section

10(b) of National Labor Relations Act limitations period for unfair labor practices adopted as

limitations period for duty of fair representation claims); Vital v. Interfaith Med. Ctr., 168 F.3d

615, 620 (2d Cir. 1999).  The union declined to arbitrate for plaintiff on August 9, 2001, but

plaintiff sued on April 1, 2002 (see Docket No. 1), more than six months later.

Plaintiff now claims that the Union for the first time raises this defense and, having not

previously raised this affirmative defense in its Answer (cf. Docket No. 20), the defense is now

waived (Docket No. 66, Pl. Memo. at first unnumbered page).

But the Union's Answer (Docket No. 20) asserted an affirmative defense that "the action

brought by the plaintiff alleging that the Union violated its duty of fair representation was not

timely brought and is barred by the statute of limitations."  (Id. 3d Affirm. Defense.)  The next

affirmative defense asserted that plaintiff's Title VII action was untimely and also barred by the

statute of limitations (id. 4th Affirm. Defense; see Docket No. 67, Union Reply Memo. at 2 n.1).

The fifth affirmative defense asserted that plaintiff did not follow the procedural prerequisites for

Title VII, "including, but not limited to, naming the Union as a respondent in the charge filed by

her with the Equal Employment Opportunity Commission"(Docket No. 20, Union Ans. 5th

Affirm. Defense).

Rule 8(c) requires a defendant to set forth (among other affirmative defenses) statute of

limitations and, it does not require the party to detail the source of the limitations period.  Unlike

O'Rourke v. City of Providence, 235 F.3d 713, 725 n.3 (1st Cir. 2001), cited by plaintiff (Docket

No. 66, Pl. Memo. at first unnumbered page), the Union raised the defense of statute of

limitations and procedural prerequisites for a Title VII action, which includes a timely charge

with the EEOC which would lead to a right to sue letter naming the Union as a respondent.

Here, the Union asserted the untimeliness of plaintiff's claim against it and has not waived this

defense.

B.      Title VII Prerequisites

Alternatively, the Union points out that (assuming plaintiff alleged that the Union

discriminated against her) Title VII requires plaintiff to exhaust her administrative remedies by

filing a complaint with the EEOC regarding the Union's discriminatory actions as well as her

EEO complaint against Quality.  See Vital, supra, 168 F.3d at 619-20 (affirming dismissal of

Title VII claim against union where only employer was named in charge and not union).  The

Union alleges that it did not receive a right to sue letter or notice of EEO charges against it.

Plaintiff's summary judgment motion papers attached a copy of a right to sue letter that was

copied to Quality (Docket No. 51, Ex. B), but not to the Union.  There is nothing in this record

10

indicating that plaintiff sought administrative relief from the EEOC or the New York State

Division of Human Rights against the Union in this action.

Plaintiff submitted a copy of her EEOC charge questionnaire against only Quality.

Plaintiff notes there that the Union failed to grieve her termination through arbitration (Docket

No. 66, Pl. Memo. at second unnumbered page, EEOC Charge Questionnaire, at 1, 3).  But, as

noted by the Union (Docket No. 67, Union Reply Memo. at 2), that questionnaire does not accuse

the Union of discrimination.  That form initially asked plaintiff the "name of employer or

organization that discriminated against" her, with that entity's address.  The question where

plaintiff mentioned the Union asked whether plaintiff sought assistance from another agency,

attorney, union, or other source (id. EEOC Charge Questionnaire at 3).  This question informed

the EEOC of plaintiff's other efforts to resolve this matter before (or while) commencing the

EEOC administrative action.  Further, plaintiff offers no proof that this charge, or even this

questionnaire, was served upon the Union.

The EEOC charge here was only against the employer, Quality, and not against the

Union.  Even if the questionnaire is construed as a charge against the Union, that document alone

does not allege the elements of a Title VII violation by the Union, such as the invidious reason

for the Union's failure to grieve plaintiff's termination.  The right to sue letter that resulted from

plaintiff's EEOC charge was against Quality only with no reference to the Union (see Docket

No. 62, Def. Union Statement ¶ 17; cf. Docket No. 66, Pl. Statement ¶ 17 (denying facts

contained in Union's Statement at ¶ 17).

11

As the Union contends, there is no proof of "identity of interest" between the Union and presumably Quality to have equal employment opportunity charges against Quality apply to the Union (see Docket No. 67, Union Reply Memo. at 3-4).

The Complaint fails to allege a Title VII claim against the Union, and, on that basis, the Union should be granted judgment.

C.     Union's Duty to Grieve

1.     In General

Finally, the Union contends that it had no legal obligation to arbitrate plaintiff's grievance against Quality. The Union points out the steps it undertook before declining to grieve plaintiff's termination. Plaintiff admitted to violating Quality's corporate policy against receiving merchandise below its full price. The Union's representative interviewed plaintiff, her parents, and other Quality employees about the incident. The employee which sold the underpriced item to plaintiff also admitted wrong doing and was terminated without complaint. That representative reported in writing to plaintiff her findings that substantiated the Union's decision not to grieve this termination, notifying plaintiff of her right to appeal to the Union's Executive Board (see Docket No. 62, Union Memo. of Law at 9) (which plaintiff did). As a practical matter, the Union through its representative attempted to regain plaintiff's job from Quality management despite plaintiff's admission of wrong doing (see Docket No. 62, Jones Aff. ¶ 20). As the Union concludes (see Docket No. 62, Union Memo. at 9), it is hard to see what else the Union could have done on plaintiff's behalf.

Plaintiff merely responds that the Union's arguments are conclusory and raise (unspecified) issues of fact (Docket No. 66, Pl. Memo. at second-third unnumbered pages). She

raises in her responding affidavit that her termination for the theft of a meal was in effect a

pretext for her earlier discipline for having cash shortages (which the Union allegedly

ineffectively represented her on).

Plaintiff needs to show that the Union's failure to represent her as she wished was

arbitrary, in bad faith or motivated by hostility or ill will.  Air Line Pilots Ass'n v. O'Neill,

499 U.S. 65, 76 (1991); see Vaca v. Sipes, 386 U.S. 171, 177 (1967).  The record here clearly

shows that the Union represented plaintiff in the earlier discipline regarding the cash shortages

and thoroughly investigated the facts leading to her termination.  Plaintiff's admission, coupled

with the admission of the other employee who sold her the meal below the market price (who

himself was terminated for his role in this activity), lead to her termination.  She has not provided

proof that the Union acted arbitrarily, in bad faith or with evil motive in declining to pursue a

conceded cause.

2.      Plaintiff's Infancy

One argument that plaintiff's parents raised before the Union (see Docket No. 62, Jones

Aff. ¶ 13) and may be pertinent here is plaintiff's infancy when she rendered her statement to

Quality management prior to her termination.  Given that plaintiff is proceeding pro se and has

not have raised this argument before this Court, the Court will (out an abundance of caution)

consider the effect of her age at the time of her statement on her present claims and the Union's

contention.  The law is clear in the criminal context in New York State, minors are entitled by

statute to certain extra procedural measures when statements are obtained from them, see N.Y.

Fam. Ct. Act §§ 724, 249-a; see also Ryan v. Miller, 303 F.3d 231, 238 (2d Cir. 2002).  But New

York law does not invalidate a minor's statement rendered outside of her parents' presence or

require the police to have the parents present during questioning, see People v. Green, 147 A.D.2d 955, 957, 537 N.Y.S.2d 702, 705 (4th Dep't 1989).  There is no similar provision in federal criminal law.

The questioning here by Quality management was a civil, internal employer matter, without the expansive panoply of rights enjoyed in the criminal context.  Plaintiff at seventeen years of age was old enough to work for Quality, see N.Y. Labor L. §§ 132 (allowing sixteen and seventeen year olds to work under work certificate), 133(2) (excluded occupations for minors), 2(15) (defining "minor").  If plaintiff's admission statement is viewed as a contract, and, as one noted commentary on New York law recites, infancy does not disable one from entering into contracts, contracts with a minor are not void but are voidable upon the minor's election. 66 N.Y. Jur. 2d Infants and Other Persons Under Legal Disability §§ 7, 15 (employment contracts) (2005); see also id. § 11 (infant not bound by release or waiver of causes of action for personal injury during her minority).  The right to avoid or disaffirm a contract is personal to the infant alone, id. § 27.  While New York law does not require a particular form of disaffirmance, the infant must manifest an intention to repudiate a contract, id. § 30.

Here, plaintiff took no action to disaffirm her statement, despite her parents' complaints about it.  First, she does not discuss this statement in her pleadings or her summary judgment motion.  Second, her parents' rejection of the statement alone does not disaffirm it.  The failure to disaffirm in a timely manner may constitute a ratification by plaintiff, see id. § 44.  Thus, plaintiff is bound by her statement admitting to the underlying action that is the basis for her termination.

14

3.      Analysis

Plaintiff points to issues of fact regarding earlier disciplinary actions by Quality and the Union's failure to timely represent her.  Plaintiff, however, fails to assert evidence that the earlier disciplinary actions had any relationship to her termination for taking the meal for less than full value.  Her termination was not due to a culmination of prior disciplinary proceedings, rather it was due to the alleged theft of the meal, coupled with plaintiff's admission of the offense.

As a result, under any argument the Union makes, summary judgment (Docket No. 62) should be **granted** to the defendant Union.

III.    Plaintiff's Motion for Summary Judgment

Plaintiff previously moved for summary judgment against the Union, arguing generally that the Union failed to arbitrate her termination and somehow colluded with Quality to discriminate against her (Docket No. 51).  But plaintiff fails to allege a prima face Title VII case against the Union.  She fails to allege or prove any collusion between Quality and the Union, much less racial or other invidious animus that would lead to her termination, when she had the burden of proving that there were no material issues of fact on that claim.  She did not allege, for example, that other (white or male) employees in her situation had Union representation to contest their terminations while she was deprived that representation due to her race, sex or some other invidious characteristic.  The Union established that the other employee in the meal purchasing incident, George Ponzo, also admitted his role in giving plaintiff the meal at below cost, did not wish the Union to assist him and was terminated for his actions (Docket No. 62, Jones Aff. ¶¶ 8, 13), the same things that happened to plaintiff.  There is no allegation of different treatment for Ponzo because he was male (or because of his race, which is not indicated

in this record) than was given to plaintiff.  Further, plaintiff admitted in her written statement that she was terminated for cause, admitting her mistake in taking the merchandise far below its actual price and initially declined Union representation.  In light of this, there is little more the Union could have done to represent her in this situation.

As stated above in the Background, plaintiff also fails to present evidence to support her contentions that the Union's decision not to arbitrate her firing was arbitrary, capricious, or done in collusion with Quality.  The points in the record she uses to support this claim (Docket No. 51, Pl. Memo. at fourth unnumbered page), either are denials by the Union or denials of knowledge of the requested admissions plaintiff sought.  The Union's summary judgment motion shows its reasons for declining to pursue plaintiff's grievance, because her defenses were meritless and she admitted to the underlying wrongful conduct that lead to her termination.  Despite her relative youth and pro se status, as the moving party for summary judgment, plaintiff still has the initial burden of establishing the absence of a material issue of fact and her entitlement to judgment as a matter of law.  She has failed to meet that burden here.  Thus, plaintiff's earlier motion for summary judgment against the Union (Docket No. 51) should be **denied**.

## CONCLUSION

Based upon the above, it is recommended that defendant United Food and Commercial Workers International District Union Local One's motion (Docket No. 62) for summary judgment dismissing the Complaint as to it pursuant to Fed. R. Civ. P. 56 be **granted** and plaintiff's motion for similar relief against the Union (Docket No. 51) be **denied**.

16

Coupled with the previous recommendation to grant judgment on the pleadings to the other remaining defendant, the Penn Traffic Company (Quality Markets) (Docket No. 65), if these recommendations are adopted this entire case should be **dismissed**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      March 2, 2006

18